# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **TANYA D. PLUNK,** ) | |
| ) | |
| Plaintiff, ) | Case No. 6:11-cv-06286-SI |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Juliana E. Coons, 440 E. Broadway, Suite 140, Eugene, OR 97401.  Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Roberta G. Bowie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202.  Attorneys for Defendant.

**SIMON, District Judge**.

Tanya Plunk seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Because the Commissioner's decision was supported by substantial evidence and is free of legal error, the decision is AFFIRMED.

## I.   BACKGROUND

### A.   The Application

Ms. Plunk is a 48 year-old woman with a ninth grade education and past work experience as a care provider and cashier. Tr. 51, 53-54. She filed an application for SSI on October 20, 2008, alleging disability due to mental disorders and asthma. Tr. 126. The Commissioner denied Ms. Plunk's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 74, 79. After an administrative hearing, held on November 16, 2010, the ALJ found Ms. Plunk not to be disabled. Tr. 11. The Appeals Council denied Ms. Plunk's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 3. Ms. Plunk now seeks judicial review of that decision.

### B.   The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially

dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is

>not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.    The ALJ's Decision

The ALJ performed the sequential analysis. At step one, he found that Ms. Plunk had not engaged in substantial gainful activity since October 20, 2008. Tr. 16. At step two, the ALJ concluded that Ms. Plunk had the following severe impairments: chronic bilateral lower extremity edema; recurrent cellulitis; affective mood disorder/bipolar disorder; anxiety disorder/posttraumatic stress disorder ("PTSD"); personality disorder; and drug and alcohol addiction. Tr. 16-17. At step three, the ALJ determined that Ms. Plunk did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17-18.

The ALJ next assessed Ms. Plunk's residual functional capacity ("RFC") and found that she could perform a range of light work with some exceptions. Tr. 15. At step four, the ALJ found that Ms. Plunk was unable to perform any past relevant work. Tr. 21. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Plunk could perform jobs such as a basket filler, final assembler, clipper, bench hand, and motor polarizer. Tr. 21-22. The ALJ accordingly ruled that Ms. Plunk was not disabled. Tr. 22.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court may not affirm the Commissioner on a ground upon which

the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.    DISCUSSION

Ms. Plunk argues that the ALJ erred by: (1) improperly determining that Ms. Plunk's osteoarthritis, irritable bowel syndrome ("IBS"), and Hepatitis C were non-severe; (2) improperly omitting Ms. Plunk's extremely poor dentition and obesity from the list of severe impairments; (3) improperly assessing Ms. Plunk's mental health treatment records; (4) improperly concluding that Ms. Plunk was not credible; and (5) providing an incomplete hypothetical to the VE.  The Court finds that the ALJ's decision was supported by substantial evidence in the record and accordingly affirms the Commissioner's decision.

**A.    Right Knee Osteoarthritis, IBS, and Hepatitis C**

Ms. Plunk argues that the ALJ erred at step two by determining that her physical impairments of right knee osteoarthritis, IBS, and Hepatitis C were not severe.  According to the Commissioner's regulations, unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.921(a). The impairment must have lasted or must be expected to last for a continuous period of at least 12 months to warrant a determination of "severe" at step two. 20 C.F.R. § 416.909.

The ALJ considered Ms. Plunk's right knee osteoarthritis, IBS, and hepatitis C at step two. He cited evidence from the record that Ms. Plunk had a range of right knee motion from 5 to 110 degrees. Tr. 610. The ALJ also considered "cursory" evidence in the record of IBS and hepatitis C, and concluded that "[g]iven the meager development of these conditions, the record does not support finding significant functional limitations." Tr. 16. Nevertheless, the ALJ did not

Page 6 – OPINION AND ORDER

deny Ms. Plunk's claim at step two. Thus, any error in designating specific impairments did not prejudice Ms. Plunk, because step two was resolved in her favor. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that . . . omission [of claimant's alleged impairment] constituted legal error, it could only have prejudiced [claimant] in step three (listing impairment determination) or step five (RFC) because the other steps, including [step two], were resolved in her favor.").

Ms. Plunk next argues that the ALJ's omission of right knee osteoarthritis and IBS caused error at steps three and five because they were not properly incorporated into the RFC. Pl. R. Br. 2. The Court rejects this argument. The Court must affirm the ALJ's determination of a claimant's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999). In making his RFC determination, the ALJ took into account those limitations for which there was record support. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *See* Social Security Ruling ("SSR") 96–8p; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Moreover, it is the claimant's burden to specify which listing she meets or equals and set forth evidence that would support diagnosis and finding of listed impairment. *Salerno v. Astrue*, 266 Fed. Appx. at *1 (9th Cir. 2008).

The ALJ found at step three that there was no applicable listing for Ms. Plunk's physical impairments. Tr. 17. In determining Ms. Plunk's RFC, the ALJ considered her physical symptoms and found that she could perform a limited range of light work. Tr. 19. The ALJ cited evidence that Ms. Plunk's physical conditions improved with treatment and exercise, noting evidence in the record the Ms. Plunk was able to exercise, ride her bike, and manage her physical

symptoms with pain medication. Tr. 185, 658. Because the ALJ justified his reasoning with substantial evidence in the record, the ALJ did not err in his decision with respect to Ms. Plunk's right knee osteoarthritis and IBS. *Bayliss*, 427 F.3d at 1217.

**B.     Dentition and Obesity**

Ms. Plunk argues that the ALJ erred because he did not list Ms. Plunk's obesity or dentition as severe impairments. Pl. Br. 7. Poor dentition is not a listed impairment. Regulations No. 4, Subpart P, Appendix 1. While an impairment can be "severe" even though it is not listed in the Commissioner's regulations, *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998), Ms. Plunk did not allege disability due to poor dentition, either in her testimony before the ALJ or in her application for SSI.

Ordinarily, the court would not assign to an ALJ the duty to investigate potential diagnoses that the claimant does not suggest herself. *Rask v. Astrue*, No. 3:10-cv-01082-SI, 2011 WL 5546935 at *15 (D. Or. Nov. 14, 2011). It is reasonable for an ALJ to assume that a claimant is not impaired by a condition that she does not allege impairs her. *See, e.g., Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (finding that ALJ did not err in not obtaining evidence concerning a condition that claimant did not allege); *Shidler v. Bowen*, 651 F. Supp. 1291, 1298 (N. D. Ind. 1987) (claimant "was not under treatment nor taking any medication for a psychological problem . . . . Therefore, it was reasonable for the ALJ to conclude that plaintiff was not suffering from any disabling . . . impairment[.]"). Here, the ALJ did not err by failing to determine Ms. Plunk's dentition to be a severe impairment.

Similarly, obesity is not a listed impairment. SSR 02–01p (2002). A claimant who alleges obesity will be deemed to meet the requirements if "there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id*. Equivalence may also be determined if a

claimant has multiple impairments, including obesity, none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment. *See id*. The Rule explains that:

> [An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record.

*Id.; see Burch*, 400 F.3d at 682.

Ms. Plunk did not allege disability due to obesity on her application for SSI, but stated during her testimony before the ALJ that she was at "obese level." Tr. 52. The ALJ accordingly considered Ms. Plunk's alleged impairments in combination with her height and weight at the time of the hearing. Tr. 16. He acknowledged that Ms. Plunk was 5 feet 3 inches tall and that she weighed about 244 pounds during her course of treatment in 2009. The ALJ also considered the impact of Ms. Plunk's weight on her right knee osteoarthritis at step two, as required by the Regulations. He concluded, however, that Ms. Plunk's right knee osteoarthritis was not "severe" when considered in combination with her weight condition. *Id*; *see Burch*, 400 F.3d at 682. The ALJ thus complied with the Commissioner's regulations regarding obesity, and his decision was not error.

Further, Ms. Plunk does not specify which listing she believes she meets or equals, and she does not set forth any evidence that would support the diagnosis and findings of a listed impairment. *See Burch*, 400 F.3d at 683 (claimant bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations). An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence. *See Lewis v. Apfel*, 236 F.3d

503, 514 (9th Cir. 2001) (the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment). Accordingly, the ALJ did not err by declining to designate Ms. Plunk's obesity as a severe impairment.

C.      **Mental Health Assessment**

Although Ms. Plunk alleges that the ALJ's assessment of the mental health treatment records was "rather inadequate," she does not cite any legal authority to show that the assessment was legally deficient. After reciting the opinion and treatment notes of treating psychiatrist Paul Helms, Ms. Plunk concludes that her mental health conditions "should have been found to meet or equal a Listing." Pl. Br. 13. She does not allege that the ALJ overlooked any specific evidence related to her mental health impairments; rather, she argues for an alternative interpretation of the evidence that the ALJ considered.

Although Ms. Plunk offers an alternative interpretation of the evidence, the Court must uphold the ALJ's decision if it is rational. *Sample*, 694 F.2d at 642 (holding where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld); *see also Burch*, 400 F.3d at 679 (holding variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner). The ALJ properly considered Ms. Plunk's mental health conditions and reasonably concluded that Ms. Plunk had only mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation. Tr. 16. The Court thus upholds the ALJ's assessment of the evidence regarding Ms. Plunk's mental health.

**D.    Credibility Determination**

Ms. Plunk argues that the ALJ improperly discredited her testimony regarding the limiting effects and extent of her impairments. Pl. Br. 15. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036.  It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider observations of physicians and third parties with personal knowledge of the

claimant's functional limitations. *Id*. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Ms. Plunk argues that the medical records document that her mental health impairments are at the severity level alleged in her testimony and in her written statements to the Social Security Administration and that the ALJ thus improperly rejected her testimony. *Id*. The Court disagrees. In her Reply Brief, Ms. Plunk offers an alternative interpretation of her behavior, describing it as "consistent with her medical records," but she does not establish that the ALJ's credibility decision was error.

Ms. Plunk stated to the Social Security Administration that she was unable to work due to mental health problems and asthma. Tr. 126. At the hearing, she testified that she had additional problems due to fibromyalgia, lower back pain, and congenital lymph-edema. Tr. 56. She

testified that it was "very difficult" to dress herself and that she requires the assistance of a personal care assistant to do simple tasks like doing dishes, vacuuming, and doing laundry. Tr. 57.  She testified that on a typical day, she sleeps for fifteen hours and spends the rest of the day watching TV and that she can only walk about half a block before becoming exhausted. Tr. 58.

The ALJ gave specific, clear, and convincing reasons for discounting Ms. Plunk's testimony regarding her physical limitations. Tr. 19. The ALJ cited evidence that Ms. Plunk's physical symptoms improved with treatment and exercise. Tr. 185.  Ms. Plunk stated to Dr. James Kassube in 2007 that she was engaged in "extended walking and biking." *Id*. Ms. Plunk's treatment records also revealed that she exercised and rode her bike daily during the course of her treatment. Tr. 658. There was also evidence that Ms. Plunk was able to do housework on a daily basis and that she reported to her counselor Ryan Smith that she took "a 28 block walk" in 2010.  Tr. 354, 554.  This evidence contradicts Ms. Plunk's testimony about her physical limitations. The ALJ thus had specific, clear, and convincing reasons for discrediting Ms. Plunk's testimony. *Dean v. Comm'r,* 2013 WL 98546, at *1 (9th Cir. Jan. 9, 2013) (unpublished) (ALJ's finding that claimant could "perform a full range of daily activities which is inconsistent with the nature, severity and subjective complaints of the complaint" was a clear and convincing reason to discredit claimant's testimony).

The ALJ also based his credibility determination on evidence that Ms. Plunk failed to comply with treatment. The record showed that Ms. Plunk missed multiple appointments with treating psychiatrist Dr. Paul Helms. Tr. 478-9. On at least one occasion Ms. Plunk also refused Dr. Helms' recommendation to have her weight checked. Tr. 479. Ms. Plunk also violated a medication contract, resulting in termination of her medical care. Tr. 639, 654. The Ninth Circuit

Page 13 – OPINION AND ORDER

has stated that it is the claimant's burden adequately to explain her failure to follow a prescribed course of treatment. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of her testimony); *see also Smolen*, 80 F.3d at 1293. Ms. Plunk did not provide any explanation for missing her appointments or for violating her medication contract. The record thus supports the ALJ's finding that Ms. Plunk failed to comply with treatment, which in turn supports the ALJ's finding as to her credibility.

The ALJ also gave specific, clear and convincing reasons for rejecting Ms. Plunk's testimony regarding her mental limitations. Ms. Plunk's treatment records show that she was alert, interactive, and cooperative, and expressed logical thoughts when sober. Tr. 180, 498. She also showed good immediate memory, was able to do simple math, and correctly performed a three-step command. Tr. 355. Examining psychiatrist Dr. Nancy Cloak also opined that overall, Ms. Plunk had good judgment and insight. *Id*. Ms. Plunk also reported improved symptoms with increased activity after continued medication management and counseling. Tr. 551, 554-5. This evidence suggests that Ms. Plunk was not as limited by her mental condition as she alleged. It was thus reasonable for the ALJ to infer that Ms. Plunk's statements regarding her mental limitations were exaggerated and not credible. Because the ALJ made specific findings of inconsistencies within the record and explained his conclusion with respect to Ms. Plunk's credibility based on these inconsistencies, he provided clear and convincing reasons for rejecting her testimony. *See Smolen*, 80 F.3d at 1284.

Finally, the ALJ noted inconsistencies in Ms. Plunk's statements regarding her alcohol use. Tr. 19. Inconsistencies in a claimant's statements provide a valid reason for discrediting the claimant's testimony. *See Smolen*, 80 F.3d at 1284 (the ALJ "may consider . . . ordinary

Page 14 – OPINION AND ORDER

techniques of credibility evaluation, such as . . . prior inconsistent statements concerning . . . symptoms"). The ALJ noted that in 2007 Ms. Plunk presented with signs of intoxication at an examination with treating physician Dr. James Kassube. Tr. 178. Ms. Plunk, however, told consulting psychiatrist Dr. Cloak on January 31, 2009 that she had been clean from all substances since December, 2006. Tr. 354. This evidence supports the ALJ's conclusion that Ms. Plunk's allegations were less than reliable. The ALJ's decision to discredit Ms. Plunk's testimony to the extent that it conflicted with the RFC was thus legally sound and supported by substantial evidence in the record. In sum, the Court upholds the ALJ's credibility ruling.

### E.  VE Hypothetical

Ms. Plunk argues that the ALJ's hypothetical to the VE was deficient because the ALJ did not "address Ms. Plunk's ability to engage in employment on a regular and continuing basis." Pl. Br. 17.  Because the ALJ did not err in discrediting Ms. Plunk's credibility or in declining to consider her other alleged impairments as severe, however, there is no reason to doubt the adequacy of the VE hypothetical. *See Chamberlin v. Astrue*, 2013 WL 550514, at \*12 (D. Or. Feb. 11, 2013).

Ms. Plunk also argues that the VE hypothetical was incomplete, specifically because it did not include observations, made by Dr. Helms and by case manager Debbie Hyrcyk, that Ms. Plunk had "a questionable ability to work" and "a questionable ability to succeed in work given her mental and physical health problems." Tr. 257, 297. Dr. Helms and Ms. Hyrcyk opined in 2008 that Ms. Plunk did not have the necessary skills to have a "more stable life."[1] Tr. 255. These statements, however, are inconclusive on the issue of disability; moreover, they do not

---

[1] Ms. Plunk also speculates as to what Dr. Cloak would have opined regarding Ms. Plunk's mental disorders, had he observed Ms. Plunk over a longer period of time. Pl. Br. 19.  Because this is neither factual evidence nor legal argument, the Court will not consider this speculation.

Page 15 – OPINION AND ORDER

identify or demonstrate any limitations that could properly be incorporated into the RFC beyond the limitations already included by the ALJ. *See* SSR 96-8 (in determining a claimant's RFC, an ALJ need only consider the "limitations and restrictions" imposed by the claimant's impairments); *see also Bayliss*, 427 F.3d at 1217. The ALJ thus did not err by omitting the observations of Dr. Helms and Ms. Hyrcyk in his hypothetical to the VE.

## IV.   CONCLUSION

The ALJ properly evaluated Ms. Plunk's impairments and provided legally sufficient reasons for discrediting Ms. Plunk's testimony. The Commissioner's decision that Ms. Plunk is not disabled was supported by substantial evidence in the record and is therefore AFFIRMED.

DATED this 8th day of April, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge